# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

_Matthew Hale, J. D._____, Plaintiff

v.

_Rudy Marques_____,_

_Amy Kelley_____,_

_Deborah Payne_____,_

_(see attached)_____,_ Defendant(s).

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 1 3 2019**

JEFFREY P. COLWELL
CLERK

_____

_(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)_

---

### PRISONER COMPLAINT

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

1

**Full List of Defendants**

Rudy Marques

Amy Kelley

Deborah Payne

James Wiencek

Susan Prose

Andre Matevousian

James Fox

Paul Klein

Christopher Synsvoll

C. Porco

J. Osland

M. Wyche

L. Robinson

D. Humphries

S. Hansen

Federal Bureau of Prisons

1 (a)

**A.    PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Matthew Hale #15177-424 U.S.P.-Max. P.O. Box 8500 Florence, CO 81226

(Name, prisoner identification number, and complete mailing address)

N/A

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

\_\_\_    Pretrial detainee
\_\_\_    Civilly committed detainee
\_\_\_    Immigration detainee
\_\_\_    Convicted and sentenced state prisoner
✓     Convicted and sentenced federal prisoner
\_\_\_    Other: *(Please explain)* _____

**B.    DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Rudy Marques, SIS Techician   ("SIS" stands for "special investigative services")

(Name, job title, and complete mailing address)

U.S.P.-Max. P.O. Box 8500  Florence, CO 81226

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes \_\_\_ No *(check one)*. Briefly explain:

Marques is an employee of the Federal Bureau of Prisons.

Defendant 1 is being sued in his/her ✓ individual and/or \_\_\_ official capacity.

2

Defendant 2: _Amy Kelley, SIS Lieutenant_
(Name, job title, and complete mailing address)

_U.S.P. – Max.  P.O. Box 8500  Florence, CO 81226_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✔ Yes ___ No (*check one*). Briefly explain:

_Kelley is an employee of the Federal Bureau of Prisons._

Defendant 2 is being sued in his/her ✔ individual and/or ___ official capacity.

Defendant 3: _Deborah Payne, Special Investigative Agent_
(Name, job title, and complete mailing address)

_U.S.P. – Max.  P.O. Box 8500  Florence, CO 81226_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✔ Yes ___ No (*check one*). Briefly explain:

_Payne is an employee of the Federal Bureau of Prisons._

Defendant 3 is being sued in his/her ✔ individual and/or ___ official capacity.

_A (see additional page(s))_

## C.   JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___   42 U.S.C. § 1983 (state, county, and municipal defendants)

✔   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

✔   Other: (*please identify*) _Religious Freedom Restoration Act (RFRA)_
_42 U.S.C. sec. 2000 bb-1_

3

**B. Defendants' Information**

Defendant 4: James Wiencek, Senior Attorney

Defendant 5: Susan Prose, Assistant U.S. Attorney

Defendant 6: Andre Matevousian, Warden

Defendant 7: James Fox, Former Warden

Defendant 8: Paul Klein, Former Warden

Defendant 9: Christopher Synsvoll, Supervisory Attorney

Defendant 10: C. Porco, Unit Manager

Defendant 11: J. Osland, Case Manager

Defendant 12: M. Wyche, Counselor

Defendant 13: L. Robinson, Counselor

Defendant 14: D. Humphries, Counselor

Defendant 15: S. Hansen, Counselor

Defendant 16: Federal Bureau of Prisons

With the exception of that of Defendant Prose and former Wardens Fox and Klein, whose current mailing addresses are presently unknown, the mailing address of all of the Defendants is U.S.P.-Max, P.O. Box 8500, Florence, CO 81226. The address of Defendant Prose is 1801 California Street, Suite 1600, Denver, CO 80202. All fifteen individuals were and are acting under color of federal law as they are employees of the Federal Bureau of Prisons. All fifteen are being sued in their individual capacities. Prose may be served at her address above; the others may be served at 5880 Hwy. 67 South, Florence, CO 81226, the physical address of U.S.P.-Max (ADX).

3 (a)

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim,
specify the right that allegedly has been violated and state all facts that support your claim,
including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s)
involved in each claim, and the specific facts that show how each person was involved in each
claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space
is needed to describe any claim or to assert additional claims, use extra paper to continue that
claim or to assert the additional claim(s).  Please indicate that additional paper is attached and
label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  Violation of the First Amendment
Establishment of Religion Clause

Supporting facts:

(ongoing harassment of Plaintiff by Defendants
Marques, Wiencek, Prose, Fox, Matevousian, Payne, and
Kelley on account of the fact that he does not adhere
to the tenets of the Judeo-Christian religion)

(see additional paper attached)

4

**D. Statement of Claims**

**Claim One:**   **Violation of the First Amendment Establishment of Religion Clause** (ongoing harassment of Plaintiff by Defendants Marques, Wiencek, Prose, Fox, Matevousian, Payne, and Kelley on account of the fact that he does not adhere to the tenets of the Christian religion)

1.      The individual defendants are employees, officers, and agents of the Federal Bureau of Prisons (hereafter "BOP"), which is also a defendant in this case.

2.      The Plaintiff, Matthew Hale (hereafter "Hale"), is an ordained minister in the non-Christian Church of the Creator (hereafter "Church") and a federal prisoner who is currently housed in solitary confinement without a cellmate at the United States Penitentiary, Administrative Maximum (hereafter "ADX").

3.      As part of Hale's duties as an ordained minister, he remains knowledgeable about his Creativity religious faith, practices that faith in his daily life, foreswears all other religions, and issues sermons to his congregation of like believers in the free world.

4.      Though Hale is a prisoner and is housed at ADX, he is innocent of having committed any crime, having proved his innocence throughout the post-conviction proceedings of his criminal case. (See also www.freematthale.org.)

5.      Hale has been housed at ADX for most of the past fourteen years, having first arrived there in April 2005. In May 2016, he was transferred to the medium security prison in Terre Haute, Indiana but was sent back to ADX in April 2017 after having engaged in lawful speech criticizing the individual who had masterminded his wrongful prosecution and conviction.

6.      Approximately two weeks after Hale's return to ADX in April 2017, the above-cited Defendants began to systematically reject any and all pieces of his incoming and outgoing mail that happened to mention the name of his Church, the name of his religion, or the fact that he is an ordained minister in that Church. Any and all mail which pertained to his Church, religion, or

4 (a)

ministerial status or responsibilities was likewise rejected and continues to be rejected to this day. Hundreds of pieces of Hale's mail – personally handled by Marques – have thus far been rejected on this basis. Many letters have also been rejected simply because they offend the Defendants' Christian sentiments.

7.      The order for this policy came from Defendants Payne and Kelley. In addition, Hale has been repeatedly charged with "gang activity" by Marques for merely writing a sermon for his own Church and religious faith as well as other First Amendment-protected religious and political activity. Finally, Wiencek and Marques have refused to allow a chapter of the book Hale is currently writing to be mailed out because it expresses anti-Christian sentiments and values and criticizes the Christian religion.

8.      All of said actions by the Defendants against Hale have been taken because Hale is not a Christian, because he in fact opposes the Christian religion, and because the religion he does embrace, Creativity, is resented by the Defendants for its un-Christian and anti-Christian tenets. The Defendants specifically seek to harm him psychologically – and have succeeded in doing so – because he does not adhere to the Christian faith and they seek to persecute him in an effort to force his conversion to that faith.

9.      Creativity is indeed Hale's RELIGION under the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. §2000bb-1 (hereafter "RFRA"), and that is the case regardless of whether this Court has thus far ruled to the contrary (see Case No. 14-CV-00245, Judge Krieger presiding).  That decision is under appeal at the Tenth Circuit (Case No. 18-1141), is erroneous, and will be reversed, by judicial or other means.

10.     In any event, the gravamen of this claim, Claim One, is that the above-named Defendants have violated Hale's First Amendment right to be free from persecution on the basis that he is

4 (6)

not a <u>Christian</u>, that the Defendants have harmed him, in violation of the First Amendment establishment of religion clause, by mistreating him on the basis that the contents of his mail, and his feelings in general, are un-<u>Christian</u> and anti-<u>Christian</u>. It bothers the Defendants that Hale subscribes to a set of beliefs – whether religious in nature or not – that goes against their own cherished Christian ideals, and they wish to impose that religion upon him in violation of the Establishment Clause.

11.     Wardens Fox and Matevousian have upheld all of the actions described above committed by Payne, Kelley, Marques, and Wiencek against Hale's person due to their own Christian beliefs. They knew, in other words, that Hale was and is being mistreated on the basis that he is not a Christian but have ratified, upheld, and in fact encouraged the other Defendants' actions all the same on the basis of their own Christian beliefs.

12.     All of the Defendants named in this Claim One want Hale to abandon his own belief system, Creativity, and adopt that of Christianity whether he wants to or not. Indeed, in an effort to convey that message to Hale in a clear and unambiguous manner, Marques was sent to Hale's cell by the other Defendants on May 21, 2018 wearing a huge Christian cross on his chest, that being the case even though employees at ADX are not allowed by policy to wear religious symbols on their clothing. They wanted to convey to Hale, without admitting it in words which could be legally damaging, that their actions in his regard are rooted in Christian bigotry and animus and that they desire to impose that religion and its values upon him. Notably, the occasion for the visit otherwise was to inform Hale that they would not be explaining to Hale what would have to be changed in his book chapter in order for the BOP to be willing to mail it out, a chapter that is critical of the Christian religion and its values. The Defendants are

4 (c)

unwilling to specify what must be changed in the chapter because the entire chapter offends their Christian beliefs.

13.     Several conversations have in fact been held between all of the above-named Defendants, including Defendant Prose who is an attorney for the BOP, to the effect that Hale should and must be mistreated because he refuses to acknowledge the alleged truths of the Christian religion. One such conversation took place in or about April 2017, another took place in or about August 2017, another in or about May 2018, and another in or about September 2018. More such conversations are believed to have taken place.

14.     Prose has in fact urged, instructed, and ordered all of the other Defendants in this Claim One to harass Hale's mail, to punish him for "gang activity," and to stop his book chapter from going out, all on the basis that her personal Christian beliefs were likewise offended by the content of Hale's speech.

Wherefore, Hale prays for judgment in his favor on this Claim One.

**Claim Two:**     **Violation of First Amendment Freedom of Speech Clause (censorship of Hale's book, without legitimate basis, by Defendants Marques, Wiencek, and Matevousian, purely due to the views it expresses).**

15.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. 10(c), paragraphs 1-8 and 11-13 as if fully stated herein.

16.     The book which Hale is writing at this time is entitled The Triumph of Life: An Assault upon the Values of the Current World. It is a book of philosophy, in the spirit of Friedrich Nietzsche, and questions the values of the current society, takes issue with those values, and offers alternative values in their stead.

17.     There is nothing whatever about Hale's book which gives rise to a legitimate penological concern on the part of the Defendants. While Hale is frank in the conveyance of his thoughts and

4(a)

personal beliefs, at no time does he advocate or urge criminal or otherwise illegal conduct within its pages and there is no rational basis for why the above-named Defendants in this Claim Two would believe that anybody anywhere would take it upon himself or herself to commit a criminal or otherwise illegal act based upon what Hale has to say therein. Rather, the Defendants simply do not like the views expressed and wish to stop those views from being read by the public. No "threat" is sincerely perceived by the Defendants to be posed by the book nor does any "threat" in fact exist.

18.     Nevertheless, Marques and Wiencek have rejected and refused to mail the chapter out, and Matevousian has upheld, supported, and ratified that decision.

19.     Reflecting the fact that Marques and Wiencek have no legitimate penological concern about the book chapter and that they have acted irrationally in their suppression of it, they have refused to tell Hale what exactly must be changed in it in order for them to be willing to mail it out. Rather, the chapter simply affords their personal (Christian) beliefs and that is the basis for their suppression of it.

Wherefore, Hale prays judgment in his favor on this Claim Two.

**Claim Three:** **Violation of First Amendment Free Exercise of Religion Clause (by Defendants Marques, Kelley, Payne, Fox, Klein, and Matevousian due to their total ban on all of Hale's religious mail).**

20.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. 10(c), paragraphs 1-9 and 11-13 as if fully stated herein.

21.     Creativity overwhelmingly, as a matter of fact and law, fulfills four out of the five factors used for determining what is a religion in this Circuit: it has 1) ultimate ideas, 2) a moral or ethical system, 3) comprehensiveness, and 4) accoutrements of religion. (See United States v. Meyers, 95 F.3rd 1475 and D. Colo. Case No. 14-CV-00245, Doc. 193 at 11-68.)

4 (e)

22.     Creativity, as a matter of religious doctrine, forbids the usage of violence and/or any other criminal or illegal activity in the fulfillment of its beliefs.

23.     There is no rational justification therefore for the total ban upon all of Hale's religious correspondence as there is no connection whatever between the ban and any legitimate penological concern on the part of the BOP. In other words, the BOP has no legitimate penological interest in imposing à total ban upon all of Hale's religious correspondence since that religious correspondence is neither criminal nor illegal in nature. Creativity seeks change through peaceful means.

24.     Hale's correspondence has in fact been lawful throughout his entire imprisonment. He has never sought the commission of an illegal act nor committed an illegal act himself with his prison correspondence.

25.     Marques, being the individual responsible for the handling of all of Hale's mail as well as for the likewise monitoring all of his phone calls, has personally implemented the ban on all of Hale's religious correspondence along the lines indicated herein.

26.     Fox, Klein, and Matevousian (past and current wardens at ADX) have ratified, upheld, and encouraged the total ban on all of Hale's religious correspondence, doing so regardless of its unlawful basis.

27.     As a prisoner in solitary confinement, Hale's correspondence is the only meaningful way that he can share his Faith with others and commune with fellow believers in that Faith. This is important as Creativity is a communal religion by its very nature.

Wherefore, Hale prays for judgment in his favor on this Claim Three.

4 (F)

**Claim Four:** **Violation of RFRA (by Defendants Marques, Kelley, Payne, Fox, Klein, and Matevousian due to their total ban on all of Hale's religious correspondence).**

28.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9, 11-13, and 21-27 as if fully stated herein.

29.     By imposing a total ban upon Hale's religious correspondence, the above-named Defendants have substantially burdened his religious exercise in violation of 42 U.S.C. §2000bb-1(c). They have destroyed his ministry to the outside world.

     Wherefore, Hale prays for judgment in his favor on this Claim Four.

**Claim Five:** **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques, Kelley, Payne, Fox, Klein, and Matevousian due to their total ban on all of Hale's Creativity correspondence).**

30.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. 10(c), paragraphs 1-9, 11-13, and 21-29 as if fully stated herein.

31.     Even if Creativity were not a religion under the First Amendment Free Exercise of Religion Clause and RFRA, the actions of the above-named Defendants as herein described likewise violate the Freedom of Speech Clause of the First Amendment. In sum, the BOP lacks a legitimate penological interest or rational justification for a total ban on correspondence having anything to do with Creativity regardless of whether it is religious in nature or not.

     Wherefore, Hale prays for judgment in his favor on this Claim Five.

**Claim Six:** **Violation of First Amendment Free Exercise of Religion Clause (by Defendants Marques, Wyche, and Humphries due to their preventing Hale from mailing out a sermon for his religious congregation and punishing him for trying to do so)**

32.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9 and 21-27 as if fully stated herein.

4 (9)

33.     In April 2017, as part of his routine duties as an ordained minister of the Creativity religious faith, Hale penned a sermon and put it in the mail to his mother for typing up and distributing to his congregation.

34.     When Marques received and read the sermon, however, he responded by issuing Hale an "incident report" for "gang activity" and refused to mail the sermon out. He also kept the sermon.

35.     At a "hearing" in which Hale was neither allowed to call witnesses nor present evidence on his own behalf, he was summarily found guilty of the charge by Wyche and Humphries even though no such "gang" exists. He was punished for that "gang activity" and the infraction was added to his disciplinary record.

36.     The sermon espoused the religious beliefs of Creativity and was wholly lawful in nature. Thus the Defendants (including BOP) lacked any legitimate penological interest in suppressing the sermon or in punishing Hale for trying to send it to his Church. Hale had delivered several sermons to his Church previously without objection by the BOP or its officials.

        Wherefore, Hale prays for judgment in his favor on this Claim Six.

**Claim Seven:** <u>**Violation of RFRA**</u> **(by Defendants Marques, Wyche, and Humphries due to their preventing Hale from mailing out the sermon for his religious congregation and punishing him for trying to do so).**

37.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. 10(c), paragraphs 1-9, 20-27, and 32-36 as if fully stated herein.

38.     By preventing Hale from delivering sermons to his Church and punishing him for trying to do so, the above-named Defendants have substantially burdened his religious exercise in violation of 42 U.S.C. §2000bb-1(c).

        Wherefore, Hale prays for judgment in his favor on this Claim Seven.

4(h)

**Claim Eight:** **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques, Wyche, and Humphries regarding sermon).**

39.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9, 21-27, and 32-36 as if fully stated herein.

40.     Even if Creativity were <u>not</u> a religion under the First Amendment and RFRA, the Defendants' actions as described in this Claim Eight are (likewise) violative of the Freedom of <u>Speech</u> Clause of the First Amendment. In sum, the BOP lacks a legitimate penological interest or rational justification in the suppression of, and punishment for, wholly lawful speech directed at the outside world.

Wherefore, Hale prays for judgment in his favor on this Claim Eight.

**Claim Nine:** **First Amendment Retaliation (by Defendants Marques, Wyche, and Humphries due to their punishing Hale for his trying to send the sermon to his congregation).**

41.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9, 21-27, 32-36, and 39-40 as if fully stated herein.

42.     By punishing him for trying to deliver a sermon to his congregation – whether that sermon was religious in nature or not – Marques, Wyche, and Humphries sought to intimidate and deter Hale from continuing to engage in that constitutionally protected activity. That was the purpose of the "gang activity" charge and punishment. Indeed, Wyche and Humphries explicitly told Hale that the punishment which they were imposing upon him was meant to "deter future similar conduct."

Wherefore, Hale prays for judgment in his favor on this Claim Nine.

4(i)

**Claim Ten:**      **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques, Kelley, and Klein, due to their censorship of an article written by Hale advocating for his release from prison by President Trump).**

43.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-4 as if fully stated herein.

44.     In January 2018, Hale tried to mail to his mother an article that he had written entitled "Why Do I Want to Be Free?" in which he, among other things, reiterated the fact that he is innocent of any crime and asked for the help of his supporters in the free world in obtaining the commutation of his sentence by President Trump. He had intended that his mother distribute the article to her email list.

45.     Marques and Kelley, however, for no legally justifiable reason, refused to mail the article out. The article was wholly lawful, wholly peaceful, and merely sought to help obtain Hale's rightful freedom by lawful means. Therefore the BOP had no legitimate penological interest whatever in suppressing the article. No "threat" was posed by the article's dissemination nor was a "threat" perceived by the Defendants to exist.

46.     Nevertheless, Warden Klein upheld and ratified its suppression.

Wherefore, Hale prays for judgment in his favor on this Claim Ten.

**Claim Eleven:**      **First Amendment Retaliation (by Marques, Synsvoll, Porco, and Klein for taking away Hale's phone calls with his mother for his merely asking her to try to get a newspaper to run his article within its pages).**

47.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-4 and 44-46 as if fully stated herein.

48.     Since Hale's article had been wrongly censored and suppressed, Hale felt obliged to notify this Court, in Case No. 14-CV-00245, of that misconduct and provided the complete text

4 ⑹

of what he had written as an exhibit so that the Court could see for itself that the BOP was acting beyond the scope of its lawful power. (See Id, Doc. 208).

49.     After the article had been filed as an exhibit with the Court as evidence of the BOP's misconduct, Hale spoke to his mother on the phone on March 11, 2018 and asked her to see whether The First Freedom, a newspaper which published at that time various legal matters, would be willing to run his exhibit.

50.     Marques, listening to his phone call, responded by charging him with two prison infractions, both of which Hale was subsequently found not guilty of by the Disciplinary Hearing Officer ("DHO") at ADX, the DHO finding that Hale could not lawfully be punished for trying to get a newspaper to publish a court document whether that was an attempt to circumvent prison censorship or not.

51.     However, without even bothering to wait for that hearing to occur, Marques, Klein, Synsvoll, and Porco imposed a ban on all phone calls between Hale and his 79-year-old mother, doing so in retaliation for his exercise of his legal right to seek the newspaper publication of documents filed with this Court.

52.     Said ban on phone calls between Hale and his mother, of ultimately six months' duration, caused great psychological and emotional distress to both individuals and was designed to intimidate and deter Hale from exercising his legal rights in the future.

53.     The ban had no rational, legitimate basis whatsoever since whatever wrong Hale had done was in filing his article with the Court, not asking his mother on the phone to see whether a newspaper was willing to run the court exhibit within its pages. Rather, the above-named Defendants imposed the ban in an effort to terrorize Hale and his mother, quite simply.

Wherefore, Hale prays for judgment in his favor on this Claim Eleven.

4(k)

**Claim Twelve:**     **Violation of Fifth Amendment Due Process Clause (by Marques, Synsvoll, Porco, and Klein due to their taking away of Hale's phone calls with his mother without affording him a prior hearing so as to avoid erroneous deprivation).**

54.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-4, 44-46, and 48-53 as if fully stated herein.

55.     While Hale was afforded a hearing on the disciplinary charges which Marques brought against him, he was afforded no hearing whatever before the above-named Defendants banned him from making phone calls to his own mother.

56.     A prisoner has a liberty interest in being able to talk to his family. Therefore, the Defendants violated Hale's due process rights when they arbitrarily stripped him of his phone calls with his mother without holding a prior hearing on the matter to determine whether he had done anything wrong. There was no reason to believe that there were exigent circumstances requiring immediate action, nor did any such exigent circumstances in fact exist. Rather, Hale's calls to his mother posed no rational "threat" to anyone or anything.

Wherefore, Hale prays for judgment in his favor on this Claim Twelve.

**Claim Thirteen:**     **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques, Osland, and Hansen due to their suppression of Hale's article about the pro-White "Unite the Right" rally in Charlottesville, Virginia and punishment for writing it).**

57.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9 as if fully stated herein.

58.     After monitoring the events which transpired in Charlottesville, Virginia during the weekend of August 11th and 12th, 2017 in which White Racial Loyalists were violently attacked by anti-racists ("Antifa") bent upon stopping them from exercising their lawful right to freedom of speech and assembly, Hale composed an article entitled "Defending Our Right to Exist Within

4(1)

Our Own Country" and tried to mail it out to his mother for dissemination to those who are, like him, loyal to their White Race.

59.     Said article was wholly lawful in its own right. In fact, Hale condemned all usage of offensive violence against anybody and condemned the anti-racists who had caused the violence in Charlottesville accordingly. Therefore, the BOP lacked any legitimate penological interest whatever in suppressing the article since it merely defended the lawful exercise of constitutional rights by those who care about the future of their White Race. The above-named Defendants had no reason whatever therefore to believe that Hale's article posed a "threat" to anybody or anything.

60.     Nevertheless, Marques not only refused to mail the article out but kept it and charged Hale with "gang activity" for writing it – even though the article had nothing whatsoever to do with "gangs" but rather with the exercise of lawful civil rights. Subsequently, at a "hearing" in which he was neither allowed to call witnesses nor present evidence on his own behalf, Hale was summarily found guilty by Osland and Hansen of that "gang activity." He was punished for that "gang activity" and the infraction was added to his disciplinary record.

Wherefore, Hale prays for judgment in his favor on this Claim Thirteen.

**Claim Fourteen:**     **First Amendment Retaliation (by Defendants Marques, Osland, and Hansen for punishing Hale for his trying to mail out his article about Charlottesville).**

61.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-9 and 58-60 as if fully stated herein.

62.     The intent of Marques in charging Hale with "gang activity" for writing the article was to intimidate and discourage him from writing such articles in the future, thus inhibiting the exercise of his constitutional rights. The intent of Osland and Hansen in punishing Hale likewise

4(n)

for the supposed "gang activity" was to intimidate and discourage him likewise from exercising his legal rights.

Wherefore, Hale prays for judgment in his favor on this Claim Fourteen.

**Claim Fifteen:** **Violation of First Amendment Freedom of Speech Clause (by Defendant Marques due to his theft, destruction, or other illegal withholding of Hale's mail).**

63. Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-13 and 25 as if fully stated herein.

64. Since he arrived back at ADX in April 2017, numerous pieces of both Hale's outgoing and incoming mail have never reached their intended recipient. Again and again, his correspondents have informed him that they had written him previously without a reply on his part – and he has informed them likewise – and yet the letters in question have never turned up.

65. As a result of the foregoing, many of Hale's correspondents have quit writing him at all rather than waste their time trying but failing to get a letter to him.

66. Marques has in fact repeatedly stolen, destroyed, or otherwise absconded with this mail with that end in view: that gradually Hale's mail service would collapse and that he, as his mail reader, would therefore no longer have to take the trouble to read it. (Indeed, Marques specifically told Hale on one occasion that he did not like reading his mail.) In addition, Marques wants to suppress Hale's speech for its own sake for the reasons already stated herein.

67. The situation became so bad in fact that by the beginning of 2018, Hale, a supposed "criminal" prisoner, felt compelled to write the Fremont County Sheriff's Office in an effort to have Marques arrested for his various crimes and mailed a letter to that office with that request on January 29th. However, that office informed Hale through his mother that it was unwilling to take action because Hale is a federal prisoner and Marques is a federal employee.

4 (A)

Wherefore, Hale prays for judgment in his favor on this Claim Fifteen.

**Claim Sixteen:**     **Violation of First Amendment Free Exercise of Religion Clause (by Marques due to his refusal to let Hale have a book which espouses his religious faith).**

68.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-10 as if fully stated herein.

69.     During the latter part of 2017, Hale's mother ordered for him The Racial Loyalty Portfolio, a book which consists of the complete texts of the first twenty issues of the Racial Loyalty newspaper, published in book form in the early 1990s by Hale's Church.

70.     The book has arrived for Hale three times at ADX. One time it was returned to sender by Marques unopened and two times it was rejected by Marques and returned to sender because it supposedly had not been sent by an actual bookstore, a requirement for prisoners to receive books at ADX.

71.     In point of fact, the book had been sent by an actual bookstore, M. Bookman Bookseller, and Marques merely claimed otherwise in order to deny Hale the book, his doing so because he wanted to inhibit Hale's free exercise of his religious beliefs.

72.     M. Bookman Bookseller is a member of Biblio.com, an online directory for bookstores around the country, and Marques knew this when he rejected the book.

73.     The BOP had no legitimate penological interest whatever in denying Hale the book as Hale is in solitary confinement and has agreed not to share his religious books with others. Furthermore, the BOP has told Hale that he can have the book but Marques simply refuses to let that happen.

Wherefore, Hale prays for judgment in his favor on this Claim Sixteen.

4(0)

**Claim Seventeen:**     **Violation of RFRA (by Marques due to his refusal to let Hale have The Racial Loyalty Portfolio).**

74.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-10 and 69-73 as if fully stated herein.

75.     The Racial Loyalty Portfolio contains Creativity religious symbolism and instruction to its adherents which is not found in the other books of Creativity, including those books which Hale does currently have access to. It also provides a means by which the reader may be able to specifically commune with the great Founder of Creativity, Ben Klassen, even though he has been dead now for twenty-five years. It was the will of Klassen that Creators acquaint themselves with the beginnings of Creativity as captured and expressed in The Racial Loyalty Portfolio, a book which he had intended as a permanent memorial to the religion he had founded and which was meant to bring his followers closer to him after his death.

76.     Therefore, by refusing to allow Hale to receive his copy of the Portfolio, Marques has substantially burdened Hale's religious exercise in violation of 42 U.S.C. §2000bb-1(c).

Wherefore, Hale prays for judgment in his favor on this Claim Seventeen.

**Claim Eighteen:**     **Violation of First Amendment Freedom of Speech Clause (by Marques due to his refusal to let Hale have The Racial Loyalty Portfolio).**

77.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-10 and 69-76 as if fully stated herein.

78.     Even if Creativity were not a religion under the First Amendment and RFRA, the BOP lacks any legitimate penological interest whatever in denying Hale the book likewise under the First Amendment Freedom of Speech Clause, for the reasons stated in paragraph 73. For the reasons stated, the book poses no "threat" to anyone or anything.

4 ⑭

79.     The censorship of the Portfolio by Marques was and is based rather upon his own personal disagreement with its content and his personal desire to prevent Hale from reading that content due to his own personal objection to it.

Wherefore, Hale prays judgment in his favor on this Claim Eighteen.

**Claim Nineteen:**     **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques, Kelley, Wiencek, and Matevousian due to their censorship of the names of the two books already written by Hale and published since he has been a prisoner at ADX).**

80.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-5 as if fully stated herein.

81.     During his tenure at ADX, Hale has written and completed two books, Ending White Slavery and The Racial Loyalist Manifesto, published in 2015 and 2016 respectively. Said books are currently available at Amazon.com.

82.     Hale has promoted these books for years and wishes to do so without interference by the BOP. However, after his return to ADX, beginning in early 2018 or thereabouts, Marques began to reject any letter to or from Hale which mentioned the mere names of these two books and has continued to do so, doing so on instructions from Kelley and Wiencek. Warden Matevousian has subsequently upheld, ratified, and encouraged this suppression and censorship.

83.     Neither Ending White Slavery nor The Racial Loyalist Manifesto espouses the Creativity religious faith, thus falling conceivably under the present (unlawful) ban which the BOP has imposed upon Hale's religious correspondence. Rather, Ending White Slavery is a social commentary and The Racial Loyalist Manifesto is a political manifesto seeking the political unification of all who are loyal to their White Race on this earth in one Racial Loyalist Party irrespective of their religious differences.

4 (q)

84.     The BOP has no legitimate penological interest whatever in censoring the names of the books that Hale has written, books which he was allowed to mail out and have published without incident by the employees of the BOP. The contents of <u>Ending White Slavery</u> and <u>The Racial Loyalist Manifesto</u> are wholly lawful in nature and there is nothing whatever about their <u>names</u> (or content) which would rationally necessitate or excuse the banning of those names within Hale's correspondence.

85.     An unknown number of Hale's incoming and outgoing letters has thus far been rejected on this basis. As a result, Hale has been deterred and intimidated from discussing his own books within his correspondence.

86.     Since Hale is in solitary confinement, his ability to create meaningful works of art in book form and freely discuss those creative accomplishments with others takes on increased significance.

Wherefore, Hale prays for judgment in his favor on this Claim Nineteen.

**<u>Claim Twenty:</u>       <u>First Amendment Retaliation</u> (by Defendants Marques, Wyche, and Robinson due to their punishing Hale for his asking his mother to sell his own personal possessions in the free world in order to pay his legal bills).**

87.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-5 and 9 as if fully stated herein.

88.     Upon Hale's return to ADX, in April 2017, he wrote a letter to his mother asking her to auction off some of his personal library in the free world (prison books he had sent home) in order to cover some of the costs involved with the prosecution of his preceding case in this Court, Case No. 14-CV-00245.

89.     Marques responded by issuing Hale an "incident report" for supposedly "conducting a business" and Wyche and Robinson summarily found Hale guilty of that offense at a supposed

"hearing" in which Hale was neither allowed to call witnesses nor present evidence on his own behalf. The infraction was subsequently added to his prison disciplinary record.

90.     The BOP has no legitimate penological interest whatever in trying to stop the prisoners in its custody from selling their lawfully acquired personal possessions in the free world in order to cover their legal costs, nor was any "business" involved here. Rather, Marques, Wyche, and Robinson simply wished to intimidate and deter Hale from engaging in constitutionally protected speech, speech which was intended merely to effectuate the lawful disposition of his own lawfully acquired property. Indeed, Wyche and Robinson explicitly told him that the punishment they were imposing upon him was meant to "deter future similar conduct," something they had no lawful right to do.

     Wherefore, Hale prays from judgment in his favor on this Claim Twenty.

**Claim Twenty-One:**          **Violation of First Amendment Freedom of Speech Clause (by Defendants Marques for holding Hale's mail for lengthy periods of time without just cause).**

91.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-14, 25, and 64-67 as if fully stated herein.

92.     Even when Marques has <u>not</u> stolen, withheld, or otherwise absconded with Hale's mail, he has repeatedly delayed mailing it out for lengthy periods of time, doing so without just cause and to inhibit Hale's freedom of speech.

93.     Specifically, one of Hale's outgoing letters was only mailed out by Marques to its intended recipient two months and twenty-two days after Hale had deposited it into the inmate mail system. Many other letters, for their part, both incoming and outgoing, have been held by Marques for weeks. When Hale complains about these delays, BOP staff simply lie by claiming that the mail is being processed according to policy – within 36 <u>hours</u> at ADX – when it is not.

4(5)

94.     Due to Marques' actions in delaying both Hale's incoming and outgoing mail, many of Hale's correspondents have given up trying to reach him with a letter. That was in fact Marques' intent.

Wherefore, Hale prays for judgment in his favor on this Claim Twenty-One.

**Claim Twenty-Two:**     **State Law Defamation (by Defendant Matevousian for falsely claiming and publishing that Creativity, and hence Hale, "advocates for violence motivated by racial discrimination").**

95.     Hale repeats and realleges, pursuant to Fed. R. Civ. Pro. Rule 10(c), paragraphs 1-14 and 21-23 as if fully stated herein.

96.     Due to all of the mistreatment which Hale has suffered at the hands of the Defendants as described throughout this Complaint, Hale's mother and Hale himself contacted their U.S. Senator Tammy Duckworth (D. Ill.) in an effort to help end that mistreatment.

97.     In response to Senator Duckworth's inquiries of ADX, Matevousian wrote a letter to her dated September 20, 2018 in which he stated, falsely, that Creativity "advocates for violence motivated by racial discrimination," meaning to imply that Hale does likewise since he is an adherent of that religion. The statement was false and defamatory to Hale's character, and was meant to prejudice Senator Duckworth against his person. Matevousian knew, or should have known, that the statement is untrue.

Wherefore, Hale prays for judgment in his favor on this Claim Twenty-Two.

4(?)

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):        Federal Bureau of Prisons, et al.

Docket number and court:        14-cv-00245  D. Colo.

Claims raised:        First Amendment, Fifth Amendment, Eighth Amend, RFRA

Disposition: (is the case still pending? has it been dismissed?; was relief granted?)        On Appeal at Tenth Circuit Case 18-1141

Reasons for dismissal, if dismissed:        Creativity not a religion; BOP actions justified

Result on appeal, if appealed:        pending

☆ see attached additional paper

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

        ✓ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

        ✓ Yes ___ No (*check one*)

5

**E. Previous Lawsuits**

John Ashcroft, Alberto Gonzalez, et al.

06-CV-00541 D. Colo.

First Amendment, Fifth Amendment

Dismissed as moot

Not appealed

5(a)

## G.   REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Plaintiff seeks an injunction halting all of the Defendants' unlawful, unconstitutional, and RFRA-violative conduct which is presently occurring as well as the full remedy of same, including the expungement from his prison record of all infractions assessed against him in violation of his legal rights. (see additional paper attached)

## H.   PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Matthew Hale, J.D.*
(Plaintiff's signature)

*March 1, 2019*
(Date)

(Form Revised December 2017)

6

## G. Request for Relief

Plaintiff also seeks money damages against the individual defendants in the following amounts:

| | |
|---|---|
| Marques: | Three million dollars |
| Kelley: | Five hundred thousand dollars |
| Payne: | Five hundred thousand dollars |
| Wiencek: | Five hundred thousand dollars |
| Prose: | Five hundred thousand dollars |
| Matevousian: | Five hundred thousand dollars |
| Fox: | Five hundred thousand dollars |
| Klein: | Three hundred thousand dollars |
| Synsvoll: | One hundred thousand dollars |
| Porco: | Ten thousand dollars |
| Osland: | Five thousand dollars |
| Wyche: | Five thousand dollars |
| Robinson: | Five thousand dollars |
| Humphries: | Five thousand dollars |
| Hansen: | One thousand dollars |
| Or: | whatever sums the jury finds is fair and just. The above sums include actual, compensatory, and punitive damages for the Defendants' violations of Hale's constitutional and statutory rights. |

6(a)

S.H
3-8-19

Special
Mail

Special
Mail

Office of the Clerk
United States District Court
901-19th St., Room A105
Denver, CO 80294-3589

Name: Matthew Hale
Reg No: 15177-424
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

Mailed
3-8

Special
Mail