IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-0752-WJM-SKC

MATTHEW HALE,

      Plaintiff,

v.

RUDY MARQUES, *et al.*,

      Defendants.

---

**ORDER ADOPTING FEBRUARY 2, 2020 RECOMMENDATION OF MAGISTRATE
JUDGE, DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION, AND
GRANTING DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on the February 2, 2020 Recommendation of

United States Magistrate Judge S. Kato Crews ("Recommendation") (ECF No. 89) that

Plaintiff's Motion for Reconsideration (ECF No. 23) be denied, Defendants' Motion to

Dismiss (ECF No. 48) be granted, and Motions to Intervene (ECF Nos. 17, 26, 28, 31,

37, 39, 53 & 78) be denied.  The Recommendation is incorporated herein by reference.

*See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  For the reasons explained below,

Plaintiff's Objection (ECF No. 91) is overruled, Defendants' Limited Objection (ECF

No. 90) is overruled, the Recommendation is adopted in its entirety, the Motion for

Reconsideration is denied, the Motion to Dismiss is granted, and the Motions to

Intervene are denied.

## I. BACKGROUND

Plaintiff Matthew Hale ("Hale") is an inmate in custody of the Federal Bureau of

Prisons ("BOP") at United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado. (ECF No. 1 ¶ 2.)[1] He alleges that actions of various BOP employees have violated his rights under the Religious Freedom Restoration Act ("RFRA"), the First Amendment, and the Fifth Amendment. (*Id.*)

In 2014, Hale filed a similar lawsuit against BOP and several of its employees in which he challenged various restrictions BOP placed on him for violating his religious rights under RFRA and the First Amendment, as well as his due process rights. *See Hale v. Fed. Bureau of Prisons*, No. 14-cv-245 (D. Colo. filed Jan. 28, 2014). In that litigation, he alleged that he is a "member, practitioner, and former leader of the Church of the Creator (also referred to as 'Creativity')." *Hale v. Fed. Bureau of Prisons* ("*Hale II*"), 2018 WL 1535508, at *1 (D. Colo. Mar. 28, 2018). "[A] central tenet of Creativity is the premise of the superiority of the white race and the need for racial purity and segregation." *Id.* Then-U.S. Chief District Court Judge Marcia S. Krieger dismissed certain claims and granted summary judgment in favor of the defendants on the others. *Id.*; *Hale v. Fed. Bureau of Prisons* ("*Hale I*"), 2015 WL 5719649, at *1 (D. Colo. Sept. 30, 2015). Hale appealed. The Tenth Circuit held that "Creativity is not a religion," and affirmed the district court's orders. *Hale v. Fed. Bureau of Prisons* ("*Hale III*"), 759 F. App'x 741, 748 (10th Cir. 2019). It thus upheld BOP's restrictions that prevented Hale from "sending or receiving correspondence that 'contains any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names." *Id.* at 744 n.1. Hale further

---

[1] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination.

appealed to the Supreme Court, which denied his petition for writ of *certiorari*. *Hale v. Fed. Bureau of Prisons*, 140 S. Ct. 196 (2019).

Hale filed the instant action on March 13, 2019, asserting 22 claims against fifteen BOP employees in their individual capacities. (ECF No. 1 at 5.)[2] Hale alleges that he is "an ordained minister in the non-Christian Church of the Creator" and practices the "Creativity religious faith." (*Id. ¶ 2.*) He challenges BOP's restrictions on his communications, and claims that BOP has retaliated against him for his religious practices and exercising his First Amendment rights.

U.S. Magistrate Judge Gordon P. Gallagher conducted an initial review of the complaint to determine whether any of Hale's claims should be summarily dismissed under D.C.COLO.LCivR 81(b). He recommended dismissing Claims 2–8, 13, and 16–19 with prejudice based on issue preclusion and the Tenth Circuit's holding in *Hale III*; dismissing Claims 9 and 14 without prejudice for failure to comply with Fed. R. Civ. P. 8(a); and dismissing Claim 22 with prejudice as legally frivolous. (ECF No. 8.) Hale objected to the recommendation that Claims 2, 13, 19, and 22 be dismissed. (ECF Nos. 8 & 9.) Senior U.S. District Court Judge Lewis T. Babcock adopted Judge Gallagher's recommendation over Hale's objections. (ECF No. 11.) On July 1, 2019, Hale filed a Motion for Reconsideration of Judge Babock's order. (ECF No. 23.) Defendants did not respond.

On August 23, 2019, Defendants filed a Motion to Dismiss the remaining seven

---

[2] While Hale names BOP as a defendant in his list of defendants (*see* ECF No. 1 at 5), he does not include BOP as a named defendant on any of his claims (*see id.* at 7–26). In addition, Hale brings claims against Defendants in their individual capacities only, not their official capacities. Accordingly, Hale has failed to state any claim against BOP.

claims (Claims 1, 10–12, 15, 20, and 21), asserting, among other things, that they are entitled to qualified immunity because Plaintiff fails to state a constitutional violation. (ECF No. 48 at 12–23.)

Between June 10, 2019, and November 8, 2019, several non-parties sought to intervene in this case. (*See* ECF Nos. 17, 26, 28, 31, 37, 39, 53 & 78.) The proposed intervenors allege they are adherents of Creativity and that their First Amendment rights are violated by BOP's restrictions on Hale's communications. Defendants oppose intervention by any of these individuals. (ECF Nos. 51 & 80.)

On February 2, 2020, Judge Crews recommended that the Motion for Reconsideration be denied, the Motion to Dismiss be granted for failure to state a claim and qualified immunity, and the Motions to Intervene be denied. (ECF No. 89.) Hale objected to the Recommendation. (ECF No. 91.) Defendants also filed a limited objection to the Recommendation because it did not address whether the *Bivens* claims against Defendants should be recognized under the circumstances presented. (ECF No. 90.)

## II. LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on

4

those issues—factual and legal—that are at the heart of the parties' dispute." *Id*.

at 1059.  In conducting its review, "[t]he district judge may accept, reject, or modify the

[recommendation]; receive further evidence; or return the matter to the magistrate judge

with instructions."  Fed. R. Civ. P. 72(b)(3).  However, where there is no specific

objection, "the court need only satisfy itself that there is no clear error on the face of the

record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory

committee's note; *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In

the absence of timely objection, the district court may review a magistrate's report

under any standard it deems appropriate.").

In considering the Recommendation, the Court is mindful of Hale's *pro se* status,

and accordingly reads his pleadings and filings liberally.  *Haines v. Kerner*, 404 U.S.

519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir.

2007).  The Court, however, cannot act as an advocate for Hale, who still must comply

with the fundamental requirements of the Federal Rules of Civil Procedure.  *See Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka,

Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003).

### III. MOTION FOR RECONSIDERATION (ECF NO. 23)

**A.**    **Legal Standard for Motion for Reconsideration**

While the Federal Rules of Civil Procedure do not directly provide for a motion to

reconsider an interlocutory ruling, district courts have broad discretion to reconsider

their interlocutory rulings before entry of judgment.  *See Rimbert v. Eli Lilly & Co.*, 647

F.3d 1247, 1251 (10th Cir. 2011); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that

adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment."). Thus, a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e), or a motion for relief from judgment brought pursuant to Rule 60(b), are not satisfied. *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* (internal quotation marks omitted; alterations incorporated). Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* (alterations incorporated); *see Sanchez v. Hartley*, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the defendants did not show "an intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice"). The Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order. *Perkins v. Fed. Fruit & Produce Co. Inc.*, 945 F. Supp. 2d 1225, 1232 (D. Colo. 2013).

**B.     Analysis**

   1.     <u>Claims 2, 13, and 19</u>

Judge Babcock found that Claims 2, 13, and 19, all freedom of speech claims, "rely on allegations that the speech at issue is based on Creativity and Plaintiff's related 'philosophy,'" and are thus barred by issue preclusion.  (ECF No. 11 at 3–4.)  Claim 2 alleges a violation of freedom of speech because of "censorship" of Hale's "book of philosophy" titled *The Triumph of Life: An Assault upon the Value of the Current World*. (ECF No. 1 ¶¶ 15–19.)  Claim 13 alleges a violation of freedom of speech due to Defendants' refusal to mail an article about "those who care about the future of their White Race."  (*Id.* ¶ 59.)  Claim 19 alleges a violation of freedom of speech due to withholding mail mentioning the titles of Hale's books, *Ending White Slavery* and *The Racial Loyalist Manifesto*.  (*Id.* ¶¶ 80–86.)  Hale alleges that the former is "social commentary," the latter a "political manifesto," and that neither book "espouses the Creativity religious faith."  (*Id.* ¶ 83.)

Hale contends that Claims 2, 13, and 19 have "nothing to do with Creativity," and therefore they are not barred by issue preclusion.  (ECF No. 23 at 5.)  In his Motion for Reconsideration, he claims that the Court misunderstood Claims 2, 13, and 19, and argues that the Court erred when it failed to take as true Hale's statement that these claims were unrelated to Creativity.  (*Id.*)

The Recommendation recognizes that the argument made by Hale—that the claims are unrelated to Creativity—simply rehashes Hale's argument in his objection to Judge Gallagher's recommendation, "which Judge Babcock already considered and

addressed." (ECF No. 89 at 5.) It further recognizes that Claims 2, 13, and 19 also incorporate by reference other allegations that refer to Creativity. (*Id.*) In his objection to the Recommendation, Hale claims that Judge Babcock made a "manifest error of law" by failing "to take the specific factual allegations of Hale's Complaint as true, including the factual allegations within his objections to Magistrate [Judge] Gallagher's report and recommendation that Claims 2, 13, and 19 have nothing to do with Creativity." (ECF No. 91 at 6.)

The Court finds that reconsideration of Judge Babcock's order dismissing Claims 2, 13, and 19 is unwarranted. The essence of Hale's Motion for Reconsideration is that Claims 2, 13, and 19 are unrelated to Creativity. (ECF No. 23 at 5.) Judge Babcock considered, and rejected, this argument. (ECF No. 11 at 3.) A motion for reconsideration is not simply an opportunity for Hale to rehash an argument that was duly considered and rejected by the Court. *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256.

Moreover, Judge Babcock did not make a manifest error of law. The Tenth Circuit upheld BOP's restrictions on "sending or receiving correspondence that contains any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names." *Hale III*, 759 F. App'x. at 744 n.1 (internal quotation marks omitted). Claims 2, 13, and 19 relate to texts about his "philosophy," politics, and social commentary that share with Creativity a belief in white supremacy. Hale cannot evade BOP's restrictions simply by using a permutation or code name. *See id.* Because Hale has already litigated the restrictions on such material, Claims 2, 13, and 19 are barred by issue preclusion.

8

2.    <u>Claim 22</u>

Hale brings a defamation claim against Defendant Matevousian for "falsely claiming and publishing that Creativity, and hence Hale, 'advocates for violence motivated by racial discrimination.'" (ECF No. 1 ¶ 97.)  Specifically, he alleges that in a letter to U.S. Senator Tammy Duckworth, Matevousian stated that "Creativity advocates for violence motivated by racial discrimination" thereby implying "that Hale does likewise since he is an adherent of that religion."  (*Id.*)

A plaintiff must allege that a defamatory statement is materially false.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1106 (10th Cir. 2017). Judge Babcock held that the statement was not defamatory because Hale could not show the statement to be false, in light of the Tenth Circuit's statement that "Hale has sought to advance the white-supremacist goal of Creativity in ways that pose a danger both inside and outside of ADX," *Hale III*, 759 F. App'x at 750.  (ECF No. 11 at 2–3.)

Hale argues that Judge Babcock made a manifest error of law because Judge Babcock failed to take Hale's allegation that Creativity does not advocate violence as true.  (ECF No. 23 at 12; *see* ECF No. 1 ¶ 22.)  The Recommendation states that Hale previously made these same arguments when objecting to Judge Gallagher's recommendation, and that even were Hale's allegation regarding Creativity true, Hale's defamation claim fails because the Tenth Circuit has found that Hale himself advocates violence motivated by racial discrimination.  (ECF No. 89 at 6–7.)  Hale objects.

The Court agrees with the Recommendation.  Hale raises the same arguments that were raised, considered, and rejected by Judge Babcock, and Hale has raised no

new reasons that the Court should reconsider the issue. *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256. Moreover, as Judge Crews observes, the heart of Hale's defamation claim is that Hale, as an adherent of Creativity, advocates for violence motivated by racial discrimination. (ECF No. 89 at 7.) Hale argues that no court has ruled that he advocates for such violence, with or without Creativity. (ECF No. 91 at 9.) The Court disagrees. The Tenth Circuit noted that Hale is serving a 40-year sentence for obstructing justice and soliciting the murder of a federal judge who entered a judgment against Creativity's predecessor. *Hale III*, 459 F. App'x at 743. It also found "overwhelming evidence in the record that . . . Mr. Hale has sought to advance the white-supremacist goals of Creativity in ways that pose a danger both inside and outside of ADX." *Id.* at 750. Given these prior findings, Hale is unable to demonstrate the material falsity of Defendant Matevousian's statement. The Court therefore denies the Motion for Reconsideration, and Hale's defamation claim remains dismissed with prejudice.

## IV. MOTION TO DISMISS (ECF NO. 48)

### A.    Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough

facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

## B.    Claim 1

Claim 1 alleges that Defendants have rejected mail referring to Creativity, charged Hale with gang activity for writing sermons, and limited dissemination of his book chapters because he is not Christian. (ECF No. 1 ¶¶ 6–8.) He argues that Defendants have endeavored to impose Christianity on him in violation of the Establishment Clause. (*Id.* ¶ 10.) Hale's previous lawsuit alleged an infringement on his rights under the Free Exercise Clause. Having failed there, Hale now seeks to invert his claim by claiming that the government's restrictions violate the Establishment Clause.

The Recommendation found that Hale failed to state a claim because Defendants had a secular purpose for their actions, the primary effect of Defendants' activity was not to advance religion, and the restrictions did not plausibly support an allegation of excessive entanglement with recognized religious activity. (ECF No. 89 at 11–20.) Hale objects to each part of the recommendation. (ECF No. 91 at 11–21.)

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (internal quotation marks omitted; alterations incorporated). Under the test established by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), "to avoid an Establishment Clause violation, the challenged government action (1) must have a secular legislative purpose, (2) must have a principal or primary effect that neither advances nor inhibits religion, and (3) must not foster an excessive government entanglement with religion." *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 796 (10th Cir. 2009). The Tenth Circuit

> interpret[s] the first and second prongs of the *Lemon* test in light of Justice O'Connor's endorsement test. That is, we ask whether government's actual purpose is to endorse or disapprove of religion, and whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. We evaluate the government's actions from the perspective of a reasonable observer who is aware of the history, purpose, and context of the act in question.

*Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1230 (10th Cir. 2017). To survive a motion to dismiss an Establishment Clause claim, a plaintiff "must allege facts which, accepted as true, suggest a violation of any part of this [*Lemon*] analysis." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 552–53 (10th Cir. 1997).

The Court will evaluate the purpose, effect, and excessive entanglement prongs to determine whether Defendants' action can withstand Establishment Clause scrutiny. *See Medina*, 877 F.3d at 1230.

1.    Purpose

The purpose prong of the *Lemon* test asks "whether the government conduct
was motivated by an intent to endorse religion." *Weinbaum v. City of Las Cruces, N.M.*,
541 F.3d 1017, 1030 (10th Cir. 2008). To decide "whether the government's purpose
was improper, a court must view the conduct through the eyes of an objective observer,
one who takes account of the traditional external signs that show up in the text,
legislative history, and implementation of the statute, or comparable official act." *Id.* at
1031 (internal quotation marks omitted). Courts do "not lightly attribute unconstitutional
motives to the government, particularly where we can discern a plausible secular
purpose." *Medina*, 877 F.3d at 1230.

The "history, purpose, and context of the act in question" of the restrictions are
instructive. *See Medina*, 877 F.3d at 1230. Hale previously brought an action against
BOP, which he lost on summary judgment. *Hale II*, 2018 WL 1535508, at *1. That
action involved challenges to restrictions placed on Hale's communications involving
Creativity while incarcerated at ADX from July 2010 to January 2011, from January to
August 2013, and after 2014. *Hale III*, 759 F. App'x at 744. From May 2016 to April
2017, Hale was incarcerated in Terra Haute, Indiana. When he returned to ADX, the
restrictions were reinstated. In response to Hale's challenge to the restrictions, the
district court found that BOP designated Creativity a security threat group ("STG") and
"prohibit[ed] [prisoners] from holding leadership roles in an STG and from conducting
STG business or providing guidance to the STG." *Hale II*, 2018 WL 1535508, at *11. It
further found that BOP had a legitimate factual basis to believe that "Hale was using his

correspondence privileges to further the leadership or guidance of Creativity," to "bridge or merge Creativity with the National Socialist Movement and to urge a white supremacist group to pursue specific means to fight for their perceived common cause." *Id.* (internal quotation marks omitted). The District Court concluded that the mail restrictions were justified by a compelling government interest in promoting safety in and out of the prison. *Id.* at *14–15. It also concluded that Creativity is not a religion. *Id.* at *11. The Tenth Circuit agreed with the district court. It affirmed that Creativity is not a religion. *Hale III*, 759 F. App'x at 741. It also concluded that

> mail restrictions on Mr. Hale are rationally connected to the
> BOP's security interests. There is overwhelming evidence in
> the record that Creativity poses an institutional security risk
> and that Mr. Hale has sought to advance the
> white-supremacist goals of Creativity in ways that pose a
> danger both inside and outside of ADX. By limiting Mr. Hale's
> ability to send and receive mail communicating Creativity's
> message, the BOP mitigates internal and external safety
> risks.

*Id.* at 750–51. This litigation history establishes a secular purpose for Defendants' restrictions on Hale's communications. The Court may properly take into account established litigation history when determining whether a complaint plausibly establishes that there is no secular purpose for Defendants' actions.

Hale argues that his complaint, taken as true, clearly alleges that "that the purpose of Defendants' actions is to enforce the Christian religion upon him," and that "no 'secular purpose' [for] the Defendants' actions . . . appears within Hale's complaint." (ECF No. 91 at 13.) However, Hale misunderstands his burden at this stage of the litigation. Conclusory allegations—such as merely repeating that the "purpose of Defendants' actions is to enforce the Christian religion on him"—are not sufficient to

state a plausible claim; instead, he must allege facts which suggest a violation.  *See*
*Bauchman*, 132 F.3d at 553.

Although Hale states some facts in support of his conclusory allegation that
Defendants' actions are motivated by an intent to force Christianity on him, they do not
support a plausible claim under the Establishment Clause.  Hale alleges that Defendant
Marques went to Hale's cell to tell him that BOP would not mail a chapter of Hale's
book, which Hale describes as "critical of the Christian religion and its values."  (ECF
No. 1 ¶ 12.)  During that conversation, Defendant Marques wore a "huge Christian
cross on his chest" to "convey to Hale, without admitting it in words . . . that
[Defendants'] actions in [this] regard are rooted in Christian bigotry and animus and that
they desire to impose that religion and its values upon him."  (*Id.*)  For the reasons
discussed by Judge Crews in the Recommendation, namely the difference between the
Establishment Clause on one hand, and the Free Speech and Free Exercise Clauses
on the other, an objective observer would not conclude that wearing a cross on a single
occasion conveyed a message that the government preferred a specific religion or set
of beliefs.

The complaint further alleges that in April 2017, August 2017, May 2018, and
September 2018, Defendants discussed that "Hale should and must be mistreated
because he refuses to acknowledge the alleged truths of the Christian religion."  (*Id.*
¶ 13.)  Hale merely alleges that these conversations took place, but provides no other
factual support.  The allegation assumes that all Defendants are Christian and that they
are all motivated by the same animus toward Hale.  Standing alone, these allegations
are insufficient to state a plausible claim for relief.

While the Court is mindful of the limitations inherent on a prisoner held in ADX, Hale's allegations do not state a plausible violation of the secular purpose prong of the Establishment Clause. When viewed through the eyes of an objective observer, Hale's allegations that Defendants' were motivated by something other than a secular, security concern are not plausible, particularly in light of the "history, purpose, and context" of the restrictions on Hale's communications and their obvious secular origin in limiting prisoner's leadership of STGs.

2.  Effect

The Court next considers whether the BOP restrictions have the principal or primary effect of advancing religion. *See Medina*, 877 F.3d at 1231 ("It is permissible government action only if its principal or primary effect is one that neither advances nor inhibits religion."). Like the purpose prong, the effect prong views the government action in question "through the eyes of an objective observer, aware of the purpose, context, and history" of the action. *Id.* Judge Crews recommended a finding that Hale had failed to satisfy the primary effect element. (ECF No. 89 at 19.) Hale objected, arguing that by preventing him "from criticizing the Christian religion and mistreat[ing] him otherwise because he happens to disagree with its principles" has the "primary effect of advancing Christianity." (ECF No. 91 at 19.)

The Court finds that an objective observer aware of the "purpose, context, and history" of the BOP's restrictions on Creativity-related communications would understand that the restrictions are designed to advance security inside and outside of ADX. *See Hale III*, 759 F. App'x at 750. In *Hale III*, the Tenth Circuit held that the Creativity-related mail restrictions were "rationally connected to the BOP's security

16

interests" and that "limiting Mr. Hale's ability to send and receive mail communicating Creativity's message . . . mitigates internal and external safety risks." *Id.* at 750–51. Even if these restrictions limit, to a small degree, Hale's ability to criticize Christianity, their *primary* effect is to limit communications about a STG. Moreover, Hale has not alleged that, were he Christian, he would be permitted to communicate STG materials without BOP interference, or identified any other person of a different faith who is permitted to communicate STG materials. Under these circumstances, the Court finds that an objective observer would not view the primary effect of the restrictions as an endorsement or advancement of Christianity. Accordingly, Hale has failed to state a claim under this prong of his purported Establishment Clause claim.

###    3.    Excessive Entanglement

The final prong of the *Lemon* test asks "whether the government action fosters an excessive government entanglement with religion." *Medina*, 877 F.3d at 1233. Judge Crews recommended finding that "there are insufficient facts from which to plausibly infer Defendants' involvement, let alone excessive entanglement, with recognized religious activity." (ECF No. 89 at 20.) In his objection, Hale states "no discussion of the 'excessive entanglement' prong is necessary . . . since Hale already prevails on the first two prongs of the Establishment Clause test." (ECF No. 91 at 20.) He thus raises no specific objection to this portion of the Recommendation. The Court thus reviews this portion of the Recommendation for clear error. Finding none, the Court adopts this portion of the Recommendation. *See* Fed. R. Civ. P. 72(b) advisory committee's note; *see also Summers*, 927 F.2d at 1167.

* * *

Because Hale does not state a claim under any prong of the *Lemon* test, he fails to state a claim under the Establishment Clause. *See Green*, 568 F.3d at 796. The Court will therefore dismiss Claim 1 without prejudice.

**C.    Claims 10 & 11**

Claims 10 and 11 relate to restrictions placed on Hale's ability to distribute and discuss an article he wrote titled "Why Do I Want to Be Free?" A copy of the article was filed in the prior litigation before Judge Krieger, and the Court takes judicial notice of the document. *Hale v. Fed. Bureau of Prisons*, No. 14-cv-245 (D. Colo. filed Feb. 20, 2018), ECF No. 208.[3] The article discusses Hale's past leadership of the white supremacy movement and his desire to be freed to continue to lead the movement.

Claim 10 alleges that Defendants violated the First Amendment by not allowing Hale to mail the article to his mother. Claim 10 explicitly incorporates Hale's allegations that he is an ordained minister of Creativity, "remains knowledgeable about his Creativity religious faith," and "issues sermons to his congregation of like believers in the free world." (ECF No. 1 ¶¶ 2–3, 43.) Claim 11 alleges a First Amendment retaliation claim for restricting Hale's phone privileges after he tried to discuss dissemination of that article with his mother.

---

[3] A court may consider a document outside the pleadings, without departing from a Rule 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). Similarly, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Among those matters of which a court can take judicial notice are "its own files and records, as well as facts which are a matter of public record." *Id.* (internal quotation marks omitted).

The Recommendation recommended that Claim 10 be dismissed as barred by issue preclusion based on *Hale III*. It also recommended that Claim 11 be dismissed because Hale could not state a cognizable First Amendment violation. Hale objects to the Recommendation, distinguishing between the ban on correspondence referencing Creativity or its aliases, *see Hale III*, 759 F. App'x at 744 n.1, and Hale's writings on other subjects including the "white racial cause" (ECF No. 91 at 22–24).

The Tenth Circuit found evidence that Hale "sought to advance the white-supremacist goals of Creativity in ways that pose a danger both inside and outside of ADX." *Hale III*, 759 F. App'x at 750. It thus found that the BOP restrictions on Hale's correspondence related to Creativity, the Worldwide Church of the Creator, or "any permutation of or code names for these group names" "mitigate[] internal and external safety risks." *Id.* at 744 n.1, 750–51. Judge Babcock found, and the undersigned agrees, that claims based on Hale's speech about Creativity and related "philosophy" are issue precluded by *Hale III*.

The article at issue in Claim 10 is substantially similar to the communications previously considered by the Tenth Circuit and Judge Babcock. In the article, Hale, an "ordained minister in the non-Christian Church of the Creator," advocates returning to his leadership position to lead the white supremacy movement. This is the precise type of speech subject to BOP's restrictions. The Court finds that Claim 10 is manifestly barred by issue preclusion, and will be dismissed with prejudice.

Claim 11 alleges retaliation for attempting to engage in speech about the article. In general, a properly stated claim for retaliation for the exercise of First Amendment rights must include three elements: (1) the plaintiff was engaged in activity protected by

the First Amendment; (2) the defendant's actions caused the plaintiff to suffer an injury that would reasonably have a chilling effect on the exercise of protected activity by a person of ordinary firmness; and (3) the defendant's action was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). As discussed above, Hale's article was not protected First Amendment activity, and therefore Hale cannot satisfy the first element of a First Amendment retaliation claim.[4] The Court will thus also dismiss Claim 11 with prejudice.

**D.    Claims 15 & 21**

Claim 15 alleges that Defendant Marques has illegally withheld Hale's mail. (ECF No. 1 ¶¶ 63–67.) Claim 21 alleges that Defendant Marques has unreasonably delayed transmitting Hale's mail. (*Id.* ¶¶ 91–94.) Judge Crews recommended dismissing Claims 15 and 21 as issue precluded to the extent that they seek relief based on mail related to Creativity, and further recommended dismissing these claims for failure to state a claim based on non-Creativity mail. Hale concedes that, to the extent Claims 15 and 21 relate to treatment of his Creativity mailings, they are issue precluded. (ECF No. 91 at 24–25.) To the extent that Claims 15 and 21 relate to Creativity, therefore, they are properly dismissed with prejudice. However, Hale also

_____

[4] Hale objects to the Recommendation's treatment of Claim 11 only on the basis that his speech was indeed protected by the First Amendment. He does not object to the Recommendation's conclusion that speech about the article may also be restricted. The Court thus reviews that part of the Recommendation for clear error. Finding none, the Court adopts that portion of the Recommendation. *See* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also Summers*, 927 F.2d at 1167.

objects to the dismissal of his non-Creativity mail delay and withholding claims.

The Court has reviewed the complaint, and finds that the allegations are too vague and conclusory to state a claim. Hale's complaint "must include sufficient facts to indicate the plausibility that the actions of which he complains were not reasonably related to legitimate penological interests." *See Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). While Hale argues that Claims 15 and 21, as pled, relate only to his non-Creativity correspondence (ECF No. 91 at 24–27), a review of the complaint belies this assertion. Claims 15 and 21 both specifically incorporate allegations that "[a]ny and all mail which pertained to [Hale's] Church, religion, or ministerial status or responsibilities was likewise rejected and continues to be rejected," and that "Marques . . . has personally implemented the ban on all of Hale's religious correspondence." (ECF No. 1 ¶¶ 6, 25.)

Moreover, the actual allegations of Claims 15 and 21 do not include sufficient facts to suggest that Defendants' actions were not reasonably related to legitimate penological interests. Claim 15 merely alleges that "numerous pieces of both Hale's outgoing and incoming mail have never reached their intended recipient." (ECF No. 1 ¶ 64.) Given Hale's incorporation of paragraphs 6 and 25 of his complaint, Hale does not state a plausible claim that the "numerous pieces" of mail supposedly withheld were unrelated to Creativity. Similarly, Claim 21 states that "[m]any other letters . . . both incoming and outgoing, have been held by Marques for weeks." (*Id.* ¶ 93.) While Hale specifically alleges that a particular letter was mailed nearly three months after Hale submitted it to the inmate mail system, there are not sufficient allegations to create a plausible inference that Defendants lacked a legitimate penological interest in delaying

mailing of that letter, *e.g.*, that the letter was unrelated to Creativity. (*Id.*) Hale has failed to plead "facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. Accordingly, the Court finds that Hale has pled only conclusory allegations of mail withholding or delay, and thus dismisses the remainder of Claims 15 and 21 without prejudice.

**E.   Claim 20**

Claim 20 alleges that Defendants engaged in First Amendment retaliation by punishing Hale for asking his mother to sell his possessions to cover his legal costs. (ECF No. 1 ¶¶ 87–90.) Hale claims that in response to his conversation with his mother, Defendants issued him an incident report for conducting a business and found him guilty of that offense at a "supposed hearing." (*Id.* ¶ 89.) The Recommendation recommended dismissing this claim because Hale was not engaged in constitutionally protected activity. (ECF No. 89 at 27.) Hale objects to the Recommendation on the grounds that the First Amendment protects more than just expressive speech, and that speech designed to pay legal bills must be protected. (ECF No. 91 at 27.)

"Not all speech is of equal First Amendment importance," and First Amendment protections for "matters of purely private significance" are less rigorous than those for matters of public interest. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). The Seventh Circuit considered a similar question in *King v. Federal Bureau of Prisons*, 415 F.3d 634 (7th Cir. 2005). In that case, a prisoner attempted to communicate with his stock broker to sell certain holdings. The Seventh Circuit held that "an order to sell, like a threat

intended to intimidate, is not the kind of verbal act that the First Amendment protects" because "[i]t has no connection to the marketplace of ideas and opinions, whether political, scientific, aesthetic, or even commercial." *Id.* at 637 (citations omitted). Under the circumstances presented here, the Court agrees. Hale has not stated a First Amendment constitutional right, and therefore cannot state a claim for First Amendment retaliation. The Court will dismiss the claim with prejudice.

## F.     Claim 12

Claim 12 alleges that Defendants violated Hale's right to due process by failing to provide Hale with a hearing before restricting calls with his mother. (ECF No. 1 ¶¶ 54–56.) Judge Crews recommended dismissing the claim because Hale failed to "allege a liberty interest such that he was entitled to any due process." (ECF No. 89 at 29.) The Recommendation noted that the "Tenth Circuit has consistently found that a prisoner does not derive a liberty interest in visitation and telephone privileges from the Constitution." (*Id.* (citing *Coleman v. Long*, 772 F. App'x 647, 649 (10th Cir. 2019).) Hale objected, arguing that he should be allowed to pursue his claim "in order to obtain . . . a modification of that law." (ECF No. 91 at 28.)

Hale effectively concedes that under existing precedent, he has no constitutional right to make a personal telephone call and thus cannot state a due process claim. While he argues that it is "plausible that the Tenth Circuit could ultimately change its view on this matter," he cites no authority to support his contention. Whether that is true or not, the Court is bound by current Tenth Circuit precedent. And under that precedent, Hale has failed to state a cognizable legal claim because he does not have a constitutional right to make telephone calls.

**G.      Qualified Immunity**

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  This Court has discretion to address the "clearly established" element before addressing whether a constitutional violation actually occurred.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014);  *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000).

As discussed above, Hale has failed to allege that any Defendant violated a statutory or constitutional right.  Accordingly, Defendants are entitled to qualified immunity on their claims.

**H.      *Bivens* Claims**

Defendants submit a limited objection to address an issue not decided by Judge Crews, namely that "none of Plaintiff's individual-capacity claims are cognizable under *Bivens*," and to preserve their rights to press their argument in the future.  (ECF No. 90 at 2.)  The Court recognizes Defendants' concern, but finds that it has become unnecessary to address Defendants' *Bivens* arguments, given that the Court will dismiss all of Hale's claims.

**V. MOTIONS TO INTERVENE (ECF NOS. 17, 26, 28, 31, 37, 39, 53 & 78)**

Given the foregoing, there are no claims remaining in this case, and the Motions to Intervene are moot.  Nonetheless, because some of Hale's claims are dismissed without prejudice and thus subject to amendment, the Court will briefly address the merits of the Motions to Intervene.

Judge Crews recommended that the Motions to Intervene be denied.  (ECF No. 89 at 31.)  The Recommendation advised the parties that specific written objections were due within fourteen days after being served with a copy of the Recommendation. (*Id.* at 39.)  Despite this advisement, no party or proposed intervenor objected to this portion of the Recommendation.

The Court has reviewed the Recommendation on the Motions to Intervene.  The Court concludes that the Magistrate Judge's analysis was thorough and sound, and that there is no clear error on the face of the record.  *See* Fed. R. Civ. P. 72(b) advisory committee's note; *see also Summers*, 927 F.2d at 1167.

**VI. CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

1.  The Magistrate Judge's February 2, 2020 Recommendation (ECF No. 89) is ADOPTED as modified;

2.  Plaintiff's Objection (ECF No. 91) is OVERRULED;

3.  Defendants' Objection (ECF No. 90) is OVERRULED;

4.  Plaintiff's Motion for Reconsideration (ECF No. 23) is DENIED;

5.  Defendants' Motion to Dismiss (ECF No. 48) is GRANTED as follows:

a. Claims 10, 11, 12 and 20 are DISMISSED WITH PREJUDICE;

b. Claims 15 and 21 are DISMISSED WITH PREJUDICE to the extent that they relate to Creativity, and otherwise DISMISSED WITHOUT PREJUDICE; and

c. Claim 1 is DISMISSED WITHOUT PREJUDICE;

6. The Motions to Intervene (ECF Nos. 17, 26, 28, 31, 37, 53 & 78) are DENIED;

7. Solely in the interest of justice, the Court grants Plaintiff leave to file a Motion for Leave to File an Amended Complaint by no later than **April 27, 2020**. Any proposed Amended Complaint must be **limited solely to those claims dismissed without prejudice by the terms of this Order**; and

8. In the event Plaintiff fails to file a timely Motion for Leave to File an Amended Complaint, the Clerk of Court shall enter a final judgment in favor of Defendants on all claims, and terminate this action.

Dated this 30th day of March, 2020.

BY THE COURT:

William J. Martinez
United States District Judge